654 F.2d 198
 1981-2 Trade Cases 64,186
 ENCODER COMMUNICATIONS, INC., and Anthony S. Lazzarino,
Plaintiffs-Appellants- Cross-Appellees,
v.
TELEGEN, INC., Graduate Education Network, Inc., Theodore
Salata, Richard J. Reynolds, Joseph Roizen, Thomson-CSF,
Inc., Michael M. Boxberger, Compagnie Francaise de
Television, Thomson-CSF Paris, and Optimedia Systems, Inc.,
Defendants-Appellees,
Thomson-CSF, Inc., Michael M. Boxberger, and Thomson-CSF
Paris, Defendants-Appellees-Cross-Appellants.
 Nos. 1012 to 1014, Dockets 80-7392, 80-7670 and 80-7672.
 United States Court of Appeals,
Second Circuit.
 Argued April 20, 1981.
Decided July 15, 1981.
 
 Jeremiah B. McKenna, Straniere, Fagin, McKenna, Runes & Nachison, Staten Island, N.Y., for plaintiffs-appellants-cross-appellees Encoder Communications, Inc., and Anthony S. Lazzarino.
 James A. Shanman, Sharfman, Shanman, Poret & Swiglia, P.C., New York City, for defendants-appellees Theodore Salata, Joseph Roizen, and Compagnie Francaise de Television.
 Gordon T. King, Coudert Brothers, New York City, for defendants-appellees-cross-appellants Thomson-CSF, Inc., Michael M. Boxberger, and Thomson-CSF Paris.
 Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and BONSAL, District Judge.*
 OAKES, Circuit Judge:
 
 
 1
 This appeal involves a complex of procedural questions arising out of pretrial maneuvers in a case commenced in August 1972 in the Supreme Court of New York and removed by the defendants to the United States District Court for the Southern District of New York. The district court, Charles S. Haight, Judge, on September 27, 1979, denied appellants' motion to amend their complaint to add a claim under the federal antitrust laws. When the appellants then amended their complaint, with the district court's permission, to add certain tort claims, complete diversity was destroyed and the district court, on July 3, 1980, remanded the case to the New York state court for lack of federal subject matter jurisdiction. The district court also dismissed the complaint as to appellee Theodore Salata, who had been discharged in bankruptcy in 1977. Appellants challenge the court's denial of leave to amend their complaint to add an antitrust claim, the remand of the case to the state court, and the dismissal as to Salata. Appellees Thomson-CSF, Inc. (Thomson N.Y.), Michel Boxberger (named in the caption as Michael M. Boxberger), and Thomson-CSF Paris (collectively referred to as the Thomson appellees) cross-appeal the district court's rulings permitting the appellants to amend their complaint to state additional tort claims and remanding the case to the state court. After following Judge Haight's thread through this procedural maze which, over the years, has involved four attorneys for appellants, two district court judges, two federal magistrates, and one state court, and in the course of which two of the appellee corporations have become defunct and one individual appellee has been declared bankrupt, we dismiss the appeal.
 
 FACTS
 
 2
 Appellant Encoder Communications, Inc. is a New York corporation controlled by appellant Anthony Lazzarino, who is a resident of New York. Appellee Compagnie Francaise de Television (CFT) is a French corporation owning world patent rights for a color process used in color television broadcasting in France and other foreign countries, known as SECAM. Thomson-CSF Paris is a French corporation which manufactures components for the SECAM process. Thomson N.Y. is a New York corporation which acts as sales representative in the United States for Thomson-CSF Paris. Michel Boxberger was an officer of Thomson N.Y. and, when this suit was commenced, a New York resident. Telegen (named in the caption as Telegen, Inc.) and Graduate Education Network (named in the caption as Graduate Education Network, Inc.) (GEN) are California corporations, both now defunct. CFT granted Telegen and GEN a six-month, nonexclusive license with respect to the SECAM process. When that license expired in March 1971, CFT entered into a five-year agreement with Telegen, pursuant to which CFT appointed Telegen as its exclusive representative in North America for promotion of the SECAM process in closed circuit applications and granted Telegen the nonexclusive right to manufacture SECAM equipment. Appellee Theodore Salata, who since the commencement of this action has been discharged in bankruptcy, was formerly president of Telegen and GEN. Appellee Joseph Roizen was Salata's successor as president of Telegen. Both Salata and Roizen were residents of California at all relevant times. Richard J. Reynolds, formerly a vice-president of Telegen, was never served. Optimedia Systems, Inc. is a New Jersey corporation which was at one time a distributor for the SECAM process.
 
 
 3
 In their original complaint appellants alleged that Telegen and GEN had represented that they were exclusive representatives for the SECAM process in North America, and that based on these representations Lazzarino had entered into an agreement whereby the two corporations conveyed to him an exclusive license in perpetuity for use of the SECAM process in certain closed circuit applications in North America. Lazzarino subsequently transferred the license to his company, Encoder. The complaint alleged that Telegen and GEN had defrauded the appellants because they had not disclosed that their relationship with CFT was terminable at the end of five years. The appellants further claimed that all of the appellees were acting in concert to interfere with the appellants' purported license rights by selling SECAM equipment to third parties.
 
 
 4
 After certain discovery proceedings, counsel for Telegen and GEN were permitted to withdraw on the ground that those corporations no longer existed in fact and therefore were unable to participate in their own defense. Judge Haight denied Roizen's motion to dismiss for lack of personal jurisdiction. And Judge Haight stated that, while his preliminary conclusion was that CFT was entitled to summary judgment, he would, before entering an order granting CFT's motion, permit plaintiffs to call to his attention any proper, outstanding requests for discovery which might lead to additional pertinent facts. The matter of further discovery was referred to a magistrate, who concluded, inter alia, that there appeared to be no reason to deny summary judgment for CFT, and that there could be no more discovery concerning Salata, since he had been discharged in bankruptcy in 1977 and therefore was no longer before the court.
 
 
 5
 The first district court order of any substance that is involved in this appeal is one made on June 29, 1979, in which the court ruled that the Thomson appellees were entitled to summary judgment. The court observed, however, that in their opposing papers appellants had advanced a new theory against the Thomson appellees which had not been asserted in the previous pleadings, namely that those appellees were involved in the fraud allegedly perpetrated upon appellants by the other appellees. The court further noted that if appellants were to amend their complaint to allege such a claim it would destroy the diversity of citizenship upon which federal subject matter jurisdiction was based.[1] The court then granted summary judgment in favor of the Thomson appellees but withheld entry of judgment for thirty days to permit the appellants to file a motion to amend their complaint, stating, however, that if such motion were granted, the case would be remanded to the Supreme Court of New York.
 
 
 6
 On July 30, 1979, appellants moved for leave to serve an amended complaint incorporating not only the fraud claim against the Thomson appellees, but also an antitrust claim against all of the appellees, alleging a complex scheme to monopolize the patent rights to SECAM and a concerted refusal to deal with appellants. The appellees opposed the motion to amend on the grounds that the antitrust claim was time-barred because it was based on conduct occurring more than four years previously, the claim could not properly be construed to relate back to the date of the original complaint, and, in any case, the proposed pleading was insufficient to state a viable antitrust claim. In the second key order, filed on September 27, 1979, the court denied appellants' motion in all respects, dismissed the complaint as to Thomson N.Y. and Boxberger, and certified its decision as a final judgment under Federal Rule of Civil Procedure 54(b) for immediate appellate review. Appellants did not appeal, however, nor did they move for reargument or take any other steps until on November 21, 1979, they announced their intention to move for relief under Federal Rule of Civil Procedure 60(b). They did so move in January 1980.
 
 
 7
 In the third key order, filed on April 16, 1980, the court modified its September 27, 1979, order to the extent that it ruled that the appellants could amend their complaint to assert additional tort claims against the Thomson appellees (as the court had previously ruled in its June 29, 1979, order). The court again noted, however, that if the appellants chose to so amend their complaint, diversity jurisdiction would be destroyed and the case remanded to state court. In its April 16, 1980, order the court also observed that the request to add an antitrust claim had already been denied in the September 27, 1979, order, and the appellants had failed to appeal pursuant to the court's certification of the issue under Rule 54(b), so the antitrust claim was completely foreclosed and would not be reconsidered.
 
 
 8
 The Thomson appellees moved for reargument of the decision of April 16, 1980, or for certification for interlocutory appeal; appellants served their new amended complaint, which included reasserted claims against Salata; and counsel for Salata once again noted his client's discharge in bankruptcy and the bankruptcy court's injunction against further litigation on these claims. On July 3, 1980, the court denied the motion for reargument or certification, dismissed the action against Salata, and remanded the case to the Supreme Court of New York. Encoder and Lazzarino appeal the July 3, 1980, order and apparently also seek to appeal portions of the September 27, 1979, and April 16, 1980, orders. The Thomson appellees cross-appeal the district court's grant of the Rule 60(b) motion.
 
 DISCUSSION
 
 9
 Appellants tardily seek to appeal the district court's denial on September 27, 1979, of leave to add an antitrust claim to their complaint. Ordinarily, denial of a request to amend the complaint is not appealable as an interlocutory matter, 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3914, at 538 (1976), but in this case the issue was explicitly certified as immediately appealable. However, when the appellants failed timely to avail themselves of the right to appeal the certified September 27, 1979, ruling, they lost the opportunity.
 
 
 10
 Nevertheless, appellants argue that the district court, in modifying its September 27, 1979, order on April 16, 1980, to the extent of permitting appellants to amend their complaint to allege fraud by the Thomson appellees, thereby extended appellants' time to appeal on the merits the denial of their motion to add an antitrust claim. It is true that the time for appeal may begin to run anew from entry of a revised judgment on a Federal Rule of Civil Procedure 60(b) motion if the lower court, in that second judgment, "has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality." FTC v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 212, 73 S.Ct. 245, 249, 97 L.Ed. 245 (1952). However, we need not reach the issue whether the April 16, 1980, order, which dealt with the appellants' tort claims, so substantially modified that portion of the September 27, 1979, order dealing with the appellants' antitrust claim as to rise to the level of a "substituted judgment" thus extending the time for appeal. This is because the April 16, 1980, judgment itself was not final and appealable unless certified by the district court under 28 U.S.C. § 1292(b), and Judge Haight expressly refused to certify his April 16, 1980, order for interlocutory appeal. The Minneapolis-Honeywell rule is based on the policy that a party should have the appropriate amount of time to appeal a final judgment, whenever that judgment comes down. We do not believe that this principle should be extended to the situation present here, in which the first judgment was not a final one and was appealable only because the district court so certified it. Therefore we conclude that the appellants lost their opportunity to appeal the September 27, 1979, order by failing timely to file; the April 16, 1980, order was interlocutory and, because the district court declined to certify it, nonappealable; and even if the September 27, 1979, order were deemed to have been replaced by the April 16, 1980, order, the Minneapolis-Honeywell rule does not apply to a situation such as this, in which the first order was appealable only because it had been certified.[2]
 
 
 11
 Once leave to add an antitrust claim to the complaint was denied, the only remaining basis for federal subject matter jurisdiction was diversity, but none of the four remaining claims was against wholly diverse defendants. The one cause of action upon which appellants depend for subject matter jurisdiction (the other claims were to be entertained on principles of pendent jurisdiction) is for a conspiracy "amongst all of the defendants" to interfere with appellants' contractual rights. Appellants' tortured reading of the complaint to the contrary notwithstanding, "all of the defendants" must include Thomson N.Y. and Boxberger, who were New York residents. Therefore, no federal jurisdiction existed and dismissal or remand to state court was required under 28 U.S.C. § 1447(c). Furthermore, that part of the district court's order of July 3, 1980, remanding the case to the state court from which it was removed is not reviewable on appeal, see 28 U.S.C. § 1447(d); State Farm Mutual Automobile Insurance Co. v. Baasch, 644 F.2d 94, 96 (2d Cir. 1981) (per curiam), and therefore we are without jurisdiction to consider the issue.[3]
 
 
 12
 Appellants argue that the district court should not have dismissed the complaint as to Salata. But an order dismissing an action as to one or more but not all of the defendants is a final and appealable judgment only when the appellants obtain from the district court "an express determination that there is no just reason for delay and ... an express direction for the entry of judgment," as is required by Federal Rule of Civil Procedure 54(b). The appellants did not obtain such a certification. Therefore we are without jurisdiction to entertain the appeal. See Clark v. United States, 624 F.2d 3 (2d Cir. 1980) (per curiam); Arlinghaus v. Ritenour, 543 F.2d 461 (2d Cir. 1976) (per curiam); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3914, at 542 (1976).[4]
 
 
 13
 The Thomson defendants cross-appeal on the basis that Judge Haight should not have reconsidered his September 27, 1979, order and issued the revised April 16, 1980, order, under Federal Rule of Civil Procedure 60(b), permitting appellants to amend their complaint to allege fraud. But a district court's grant of a Rule 60(b) motion can be reversed only if it was an abuse of discretion. See Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 656 (2d Cir. 1979). Here, it was necessary for the court to resolve the inconsistency between its June 29, 1979, and September 27, 1979, orders. Clearly, the grant of the 60(b) motion was not an abuse of discretion.
 
 
 14
 Appeal from denial of motion to amend complaint to assert antitrust claim dismissed; appeal and cross-appeal from remand to state court dismissed; appeal from dismissal of complaint as to Salata dismissed; grant of Rule 60(b) motion permitting leave to amend complaint to add tort claims affirmed.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 The original complaint, which contained only state law tort claims, was removed to federal court on diversity grounds even though the appellants were New York residents and two of the appellees, Thomson N.Y. and Boxberger, were New York residents. This removal was allowed because the first claim in the original complaint, for deceit, was deemed to be solely against the California appellees and the court concluded that it was "a separate and independent claim or cause of action" within the meaning of 28 U.S.C. § 1441(c), and therefore removable despite the fact that it was joined with other, nonremovable claims
 
 
 [2]
 We note that even if we were to reach the merits of the request to assert an antitrust claim, the events giving rise to the alleged antitrust violation took place in 1973 at the latest, and therefore an attempt to plead the antitrust cause of action in 1979 was untimely. See 15 U.S.C. § 15b (four year statute of limitations for antitrust damages suits). And we believe that the district court properly refused to "relate back" the proposed amendment to the date of the original pleading, under Federal Rule of Civil Procedure 15(c), because the antitrust claim did not arise "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." See generally 6 C. Wright & A. Miller, Federal Practice and Procedure § 1497 (1971)
 
 
 [3]
 Appellants referred in oral argument to Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), but that case involved review by mandamus of a remand to state court that had been improperly based on a ground not authorized by the remand statutes. The case is not in point
 
 
 [4]
 On the merits, we note that the district court, in dismissing the complaint as to Salata, apparently was proceeding on the basis that the bankruptcy court, which has exclusive jurisdiction with respect to discharges, in 1977 had enjoined all creditors from "instituting or continuing any action" to collect any dischargeable debt. Appellants contend that their lawsuit against Salata based on fraud is one in the nature of "obtaining money or property by false pretenses" and therefore, under section 17(a)(2) of the old Bankruptcy Act, 11 U.S.C. § 35(a)(2) (1976), is not automatically dischargeable. It appears that this argument may, if reasserted, encounter the objection that the appellants did not file an application to contest dischargeability of this debt as was required by the statute in effect at the time of Salata's discharge. See id. § 35(c)(2); 1A Collier on Bankruptcy P 17.28A(3), at 1742.1 (14th ed. 1978). As for the injunctive and declaratory relief claims, since Salata is no longer serving as an executive of Telegen or GEN (which corporations are in fact defunct) the claims would appear to be essentially moot and could have been dismissed some time ago